In re COOL FUEL, INCORPORATED, Debtor.

Cool Fuel, Incorporated, a California corporation, Appellant,

v.

Board of Equalization of the State of California, Appellee.

No. 98–56092.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 11, 2000

Filed April 21, 2000

---

James M. Harris, Thomas P. Hanrahan and Thomas E. Patterson, Sidley & Austin, Los Angeles, California, for the appellant.

Anthony Sgherzi, Joseph M. O'Heron, Deputy Attorneys General, Los Angeles, California, for the appellee.

Before: RYMER, FERNANDEZ* and FISHER, Circuit Judges.

FISHER, Circuit Judge:

Cool Fuel appeals the Ninth Circuit Bankruptcy Appellate Panel's ("BAP") decision that a claim for unpaid Use Fuel taxes filed by the California State Board of Equalization ("the Board") in Cool Fuel's bankruptcy proceeding was not barred by the three-year statute of limitations provided in California Revenue and Taxation Code ("R & TC") § 8971. It argues alternatively that if the Board's claim is not barred by § 8971, it is not ripe because the limitations period has not begun. Cool Fuel attempts to read the three-year statute of limitations in § 8971 to require the

---

* Judge Fernandez was drawn to replace Judge Wiggins. He has read the briefs, reviewed the record and listened to the oral argument tapes.

Board to elect between two alleged options under this statute. In so doing, Cool Fuel parses the language of the statute in ways that are not only internally inconsistent, but would pervert and frustrate the structure of the tax code itself.

In simple terms, the statute appears designed to assure that the Board brings an action to collect a delinquent tax within three years after either (a) the 25th day of the month following the date on which the taxable use of fuel occurred, when the taxpayer files an accurate return but does not pay on time; or (b) the date the Board's determination of the amount of tax the taxpayer actually owes becomes final. The Board is required to make such a determination under specified circumstances, such as when the taxpayer fails to file any return, files a return but claims an amount of taxes the Board disputes, or—as here—disputes the amount of tax that the Board initially determines.

## FACTUAL and PROCEDURAL BACKGROUND

In this case, the Board seeks recovery of unpaid monthly Use Fuel taxes arising from alleged Cool Fuel sales of 11 million gallons of diesel fuel from January through September 1993. Cool Fuel filed monthly Use Fuel Tax returns during this period but did not report the alleged sales. The last taxable transaction at issue took place in September 1993, and Cool Fuel filed a return for September taxes on October 25, 1993. Following a field investigation of Cool Fuel's records by a Board auditor, the Board on March 8, 1994 made an initial Deficiency determination that Cool Fuel owed $2,514,284.22 in taxes and interest. Cool Fuel then exercised its right under the tax code to petition for a redetermination and request a hearing before the Board.

Before the Board issued a final determination on Cool Fuel's petition for redetermination, Cool Fuel filed a petition for bankruptcy protection on November 1, 1996. The petition for bankruptcy had the effect of staying the Board's administrative proceeding, thus preventing the Board from finalizing its determination. *See* 11 U.S.C. § 362(a)(1) (1994). On January 23, 1997, the Board filed in bankruptcy court a proof of claim for $2,606,570.40 in disputed taxes and interest. Cool Fuel objected to the Board's claim, alleging in part that it was barred by the three-year statute of limitations provided in R & TC § 8971.

Cool Fuel argues that because three years elapsed from the date the alleged taxes became "due and payable" under § 8751—October 25, 1993—the Board's claim in bankruptcy is barred. According to Cool Fuel, the Board elected not to proceed under the "final determination" option of § 8971—as Cool Fuel construes it—and thus cannot date the three-year period from whenever the Board issues its final decision on Cool Fuel's petition for redetermination. In effect, Cool Fuel contends that, in allowing Cool Fuel to utilize an administrative remedy for its dispute over the tax due, the Board mistakenly believed the limitations period began when the redetermination became final.

This unlikely outcome was persuasive to the bankruptcy court, but was overturned by the BAP. The BAP reasoned that the taxes at issue were assessed pursuant to a Board determination and that, under R & TC § 8854, which provides that Board determinations do not become "due and payable" until they become final, the Board's claim was not barred by § 8971 because the Board had not issued a final determination. We agree with the Board that its claim is not barred by § 8971 and further conclude that, although the Board's cause of action has not yet accrued under § 8971, it is a ripe allowable claim under the Bankruptcy Code because it is based on Cool Fuel's pre-petition conduct that the Board contemplated would lead to a claim for unpaid taxes. We thus affirm the BAP.

## STANDARD OF REVIEW

We review de novo the BAP's conclusions of law. *See In re Century Cleaning Servs., Inc.*, 195 F.3d 1053, 1055 (9th Cir.1999). Moreover, we indepen-

dently review a bankruptcy court's ruling on appeal from the BAP. *See In re Mega-foods Stores, Inc.,* 163 F.3d 1063, 1067 (9th Cir.1998).

### DISCUSSION

### I. APPLICABLE PROVISIONS OF THE CALIFORNIA REVENUE & TAXATION CODE

This controversy concerns when an amount of Use Fuel taxes determined by the Board becomes "due and payable," and thus triggers the three-year limitations period provided in R & TC § 8971. We must interpret R & TC § 8971—which is not a model of draftmanship or clarity—in the context of the overall structure and purpose of the Use Fuel Tax scheme. Section 8971 provides, as relevant:

> At any time within three years after any tax or any amount of tax required to be collected becomes *due and payable* and at any time within three years after the *delinquency* of any tax or any amount of tax required to be collected, ... the board may bring an action ... in the name of the state to collect the *amount delinquent* together with penalties and interest.

Cal. Rev. & Tax.Code § 8971 (West 1994) (emphases added).

Cool Fuel alleges R & TC § 8751 defines the term "due and payable" as used in § 8971. Section 8751 is entitled "Due Dates," and provides that "[t]he excise tax imposed by this part is due and payable monthly on or before the 25th day of the month following each calendar month in which a taxable use of fuel occurs." *Id.* § 8751. Cool Fuel interprets § 8971 as giving the Board the mutually exclusive alternatives of either bringing an action under the "due and payable" clause as defined by § 8751, or making an administrative determination of the amount of tax due and bringing an action under the "de-

linquency" clause within three years after the Board's determination becomes final. Cool Fuel would have us bar the Board's claim under the first clause and require the Board to refile it under the second—a claim that would then be untimely and thus discharged under Cool Fuel's reorganization plan. However, the Board did not limit its claim as arising under the first clause when it filed its proof of claim; it simply filed under § 8971. The Board argues that § 8971 does not present mutually exclusive alternatives, and construes both the "due and payable" and "delinquency" clauses as allowing the Board to bring suit when the tax amount is finally determined—not before.

Were § 8751 the only definition of "due and payable" in the Use Fuel Tax provisions, Cool Fuel's reading of the "due and payable" clause might prevail. However, the R & TC provides another definition that specifically addresses when Board determinations of amounts of Use Fuel taxes become "due and payable." Section 8854, located in chapter 4 ("Determinations") of the Use Fuel Tax provisions and entitled "Due Date; penalties," provides:

> All determinations made by the board under Articles 2 or 3 of this chapter are due and payable at the time they become final. If they are not paid when due and payable, a penalty of 10 percent of the amount of the determination ... shall be added thereto.[1]

*Id.* § 8854. A Board determination under Articles 2 or 3 becomes final 30 days after it is served on the party being taxed unless that party petitions for a redetermination before the 30 days expire. *Id.* § 8851. If—as occurred here—a taxpayer files a timely petition for redetermination, the Board must reconsider the determination and, if requested, grant an oral hearing. *See id.* § 8852. The Board's decision on a petition for redetermination will not be-

---

1. Article 2 sets forth the procedure for making determinations that a return filed with the Board has claimed a deficient amount of taxes due. *Id.* §§ 8776–8782. Article 3 addresses the board determinations that tax is due when no tax return has been filed. *Id.* §§ 8801–8805. Here, the Board made a deficiency determination under Article 2 based on Cool Fuel's tax return.

come final until 30 days after the Board mails a notice of its decision. *See id.* § 8853.

The Board argues that because the amount of taxes involved in this case was assessed pursuant to its determination, § 8854 defines when this amount becomes "due and payable" under § 8971. Under § 8854, the amount of taxes determined by the Board never became "due and payable" because Cool Fuel filed a petition for redetermination in 1994 and then filed for bankruptcy before the Board could issue a final determination. The Board argues, therefore, that under § 8854, the § 8971 limitations period has not begun and thus its claim is not barred.

## II. THE LIMITATIONS PERIOD IN § 8971

### A. *"Due and Payable"*

■ We conclude that the Board's interpretation of "due and payable" to include amounts of tax assessed pursuant to a Board determination is correct. We can locate no case—state or federal—which interprets the meaning of "due and payable" in § 8971. However, the text of § 8971, California state court precedent interpreting a very similar limitations statute and the structure of the Use Fuel Tax amply support the Board's reading.

■ Cool Fuel argues that the § 8751 definition of "due and payable" must govern all actions brought by the Board under the due and payable clause because § 8971 states that the limitations period begins when the "tax" becomes "due and payable," not when "determinations" become "due and payable." However, Cool Fuel overlooks the language "or *any amount of tax*" in the due and payable clause. *Id.* § 8971 (emphasis added). We find it significant that the clause specifically uses the term "amount of tax," the same term used throughout the Use Fuel provisions to de-

scribe board determinations. *See, e.g., id.* § 8776 ("One or more deficiency determinations may be made of the amount of tax due for one or for more than one month"); *id.* § 8777 ("The amount of the determination ... shall bear interest ... from the 25th day of the month for which the amount of the tax, or any portion thereof, should have been reported until the date of payment"). These provisions indicate that the term "any tax or any amount of tax" in § 8971 includes Board determinations of the "amount of tax" due from a taxpayer. The amount of tax due pursuant to a Board determination is "due and payable" when the determination becomes final. *See id.* § 8854. The Board's claim is thus not barred under § 8971 because the Board has not made a final determination of the amount of taxes owed by Cool Fuel.

This reading of § 8971 is also supported by § 8876 which provides:

> Any user who fails to pay any tax, except taxes determined by the board under Article 2 ... or Article 3 ..., within the time required shall pay a penalty of 10 percent of the amount of the tax, in addition to the tax, plus interest ... from the date on which the tax became due and payable.

*Id.* § 8876. As the BAP concluded, because § 8876 specifically excluded tax determined by the Board from "any tax," it follows that, without the specific language of exclusion, taxes determined by the Board are included in the term "any tax" as used in § 8971. Applying the rule of statutory construction that identical words used in different parts of the same statutory scheme are intended to have the same meaning, *see Commissioner of Internal Revenue v. Lundy,* 516 U.S. 235, 250, 116 S.Ct. 647, 133 L.Ed.2d 611 (1996), Board determinations are included within "any tax" in both clauses of § 8971.[2] *See* Cal. Rev. & Tax.Code § 8971.

---

**2.** There is no tension in concluding that Board determinations are included in both "any tax" and "any amount of tax." The provisions concerning Board determinations allow the Board to make a determination (1) that *tax* is due when the taxpayer's tax return

alleges that no tax is due or when the taxpayer files no return, or (2) that a taxpayer owes an *amount of tax* where the Board disputes the amount claimed on a return. *See* Cal. Rev. & Tax.Code §§ 8776, 8801.

In *People v. West Publishing Co.*, 35 Cal.2d 80, 216 P.2d 441 (1950), the California Supreme Court adopted the Board's construction of "due and payable" when it interpreted a statute of limitations quite similar to § 8971. The statute of limitations in *West Publishing* provided:

> At any time within three years after any amount herein required to be collected has become *due and payable* and any time within three years after the *delinquency* of any tax, the board may bring an action ... to collect the *amount delinquent,* together with penalties and interest.

California Use Tax Act of 1935 § 28, 1935 Cal. Stat. 1311, *amended as § 24 by* 1937 Cal. Stat.1944, *as amended* 1939 Cal. Stat. 2167 (emphasis added); *see West Publ'g,* 216 P.2d at 444. In *West Publishing,* West failed to file a return for use taxes resulting from its sale of law books and periodicals from 1935 to 1939, and the Board of Equalization made a determination, on February 28, 1940, that West owed $36,922.50 in taxes, interest and penalties. 216 P.2d at 443. When that determination became final and West refused to pay the tax, the Board brought an action under the California Use Tax Act of 1935 ("Act") on October 15, 1940. *See id.* at 441–42.

West claimed that the recovery of use tax on sales made before the quarterly period ending October 15, 1937 was barred under the statute of limitations because the action was filed over three years after the taxes for those sales became "due and payable." *See id.* at 444. West relied on a section of the Act which provided: "[t]he tax imposed by this act shall be due and payable to the board quarterly on or before the fifteenth day of the month next succeeding each quarterly period." California Use Tax Act § 7, *as amended* 1939 Cal. Stat. 2157. The court rejected West's argument, because it "g[a]ve[ ] no effect to" the provisions of the Act dealing with Board determinations, which became "due and payable" when they became final. *West Publ'g,* 216 P.2d at 444 (citing California Use Tax Act of 1935 §§ 9, 10, *as amended* 1939 Cal. Stat. 2159). The court

concluded that the Board's action was authorized under the Act's due and payable clause because the Board's action was commenced well within the three-year period after the Board's determination became final. *See id.* at 444 ("[A]ny action to collect the amount which had then become 'due and payable' pursuant to the board's determination could be brought within three years"). The court therefore held that the Board was not barred from recovering taxes originally due before October 15, 1937. *See id.* at 445. Given the similarities between § 8971 and the statute of limitations provision in the California Use Tax Act of 1935, *West Publishing* governs the present case.

## B. "And at Any Time Within Three Years After the Delinquency"

Cool Fuel argues that "delinquency" is a term of art that includes only overdue Board determinations, and that the Board's interpretation of the due and payable clause would render "delinquency" superfluous. Although there may be some overlap between the clauses under the Board's reading of § 8971, Cool Fuel's interpretation contradicts clear precedent, is internally inconsistent and would undermine the determination process required by the Use Fuel Tax.

First, any apparent superfluity inherent in the Board's reading was also true of the California Supreme Court's reading of the limitations provision in *West Publishing.* Second, any reading of the "due and payable" clause as authorizing a Board action when there is no "delinquency" is inconsistent with the last clause of § 8971—modifying both the due and payable and delinquency clauses—which authorizes the Board to bring an action only "to collect the amount delinquent." Moreover, as Cool Fuel's counsel conceded at oral argument, if Cool Fuel's contention that § 8751's definition of "due and payable" governs all claims brought under that clause were correct, only the term "tax" in the due and payable clause would be nec-

essary, and "or any amount of tax" would be superfluous.[3] There may indeed be no way to read § 8971 without rendering some of its language superfluous.

In addition, "delinquency" in § 8971 cannot be limited to the term of art Cool Fuel alleges because other provisions of the Use Fuel Tax define "delinquency" as any outstanding obligation imposed under the Use Fuel Tax—even those arising without a Board determination. Section 8952, entitled "Notice of Delinquency," uses the term "delinquency" to refer to payments owed even where the Board has not made an administrative determination. *Cal. Rev. & Tax.Code* § 8952 ("If any user is delinquent in the payment of any obligation imposed under this part, or in the event a determination has been made against such a user which remains unpaid, the board may ... give notice thereof"). In addition, § 8827 implies that "delinquency" includes overdue taxes not determined by the Board by using the term "delinquency penalty" to describe the penalty for the failure to pay "any tax, *except taxes determined by the board* ... within the time required." *Id.* § 8876 (emphasis added). Most significantly, as we noted above, Cool Fuel's interpretation of "delinquency" is inconsistent with the last sentence of § 8971, authorizing the Board to bring an action only "to recover amounts delinquent." These provisions and the structure of the Use Fuel Tax indicate that "delinquency" means any overdue tax or amount of tax, whether or not pursuant to a final Board determination.

Lastly, Cool Fuel's reading of the due and payable clause as operating "independently of the administrative process and permitting the Board to file suit within three years of the filing of the tax return, whether or not any administrative proceedings have been concluded," would also pervert and frustrate the Use Fuel Tax by giving the Board discretion to circumvent the determination process. Cool Fuel's reading would apparently allow the Board to render the administrative determination process meaningless, or avoid it altogether, by bringing an action under the due and payable clause while a determination is pending. *See, e.g., id.* § 8801 ("If any user fails to make a return, the board shall make an estimate of the amount of fuel used by the user .... and determine the amount required to be paid to the State"). Moreover, Cool Fuel's reading would also ostensibly allow the Board to avoid making a redetermination upon a timely taxpayer petition by bringing an action in court instead of reconsidering its original determination. *See id.* § 8852 ("If a petition for redetermination is filed within the 30–day period, the board shall reconsider the determination").

▪ ■ In sum, although as a rule of statutory construction every word of a statute should be given effect, "this general principle is meant to guide the courts in furthering the intent of the legislature, not overriding it. When rigid adherence to the general rule would require disregard of clear indications to the contrary, the rule must yield." *United States v. Zacks,* 375 U.S. 59, 69, 84 S.Ct. 178, 11 L.Ed.2d 128 (1963). In this case, the clear indications from the text of § 8971, the structure of the Use Fuel Tax and *West Publishing* compel us to hold that the Board's reading of § 8971 is correct.

---

**3.** After oral argument, Cool Fuel's counsel sent this court a letter stating that his representation at oral argument was incorrect. Cool Fuel now claims that "any tax" refers to taxes paid by the taxpayer, while "any amount of tax required to be collected" refers to those collected by the taxpayer. Under the Use Fuel Tax, vendors and wholesalers must collect taxes from any user to whom they sell fuel. *See id.* §§ 8733, 8738. The tax collected by a retailer or wholesaler is a debt to the state which must be paid when due and payable. Cool Fuel's last ditch effort fails because throughout the Use Fuel Tax provisions, the tax required to be collected by a vendor or wholesaler is referred to as "the tax required to be collected"—not as amounts. *See id.* §§ 8733, 8738; *see also id.* §§ 8732, 8737, 8740 (referring to the taxes required to be collected as "the tax"). In sum, even Cool Fuel's new argument renders "or any amount of tax" superfluous.

Accordingly, we conclude that an action by the Board to collect taxes assessed pursuant to a Board determination is not barred under § 8971 if it is brought within three years after the Board's determination that tax or any amount of tax is owed becomes final (*i.e.*, "due and payable" under § 8854). The Board's claim is not barred by § 8971 because the Board has not issued a final determination of the amount of Cool Fuel's unpaid use fuel taxes.

### III. RIPENESS

■ Cool Fuel argues in the alternative the Board's claim is unripe because the Board has not issued a final determination and the Board's right to bring a collection action accrues under § 8971 only after the Board's determination becomes final. Cool Fuel did not raise this issue before the bankruptcy court or the BAP. Ordinarily we would not address the issue. *See In re Skywalkers, Inc.*, 49 F.3d 546, 548 n. 4 (9th Cir.1995); *In re Perez*, 30 F.3d 1209, 1213 (9th Cir.1994). However, Cool Fuel's ripeness claim raises the issue of the bankruptcy court's jurisdiction over the Board's claim, and thus may be raised for the first time on appeal. *See Reno v. Catholic Soc. Servs.*, 509 U.S. 43, 58 n. 18, 113 S.Ct. 2485, 125 L.Ed.2d 38 (1993) (concluding ripeness is derived in part from Article III principles and may be raised for first time at Supreme Court); *In re French*, 139 B.R. 476, 480 (Bankr.D.S.D. 1992) ("Since the bankruptcy court is a unit of the federal district court, it is subject to the doctrine of ripeness under Article III of the Constitution").

■ The bankruptcy court has jurisdiction to consider the Board's claim. It is well-established that a claim is ripe as an allowable claim in a bankruptcy proceeding even if it is a cause of action that has not yet accrued. *See In re Jensen*, 995 F.2d 925, 929 (9th Cir.1993); *In re Remington Rand Corp.*, 836 F.2d 825, 831–32 (3d Cir. 1988) (holding that government claim was allowable in bankruptcy proceeding even though claim had not accrued under the Contract Disputes Act of 1978); 11 U.S.C.

§ 101(5)(A) (defining "claim" as any "right to payment," even if it is "contingent" or "unmatured"); 11 U.S.C. § 502(b)(1) (stating that bankruptcy court "shall determine the amount of [a] claim ... and allow such claim[s] ... except to the extent that ... such claim is unenforceable against the debtor ... for a reason other than because such claim is contingent or unmatured"); *see generally* LAWRENCE P. KING, 1 COLLIER BANKRUPTCY MANUAL ¶ 101.05[1] at 101–9 & nn. 9,11 (3d ed.1999) (noting that an allowable claim includes "a cause of action or right to payment that has not yet accrued or become cognizable"). Even when a cause of action is based on state law, "the question of when a [claim] arises under the bankruptcy code is governed by federal law." *Siegel v. Federal Home Loan Mortgage Corp.*, 143 F.3d 525, 531–32 (9th Cir.1998) (holding that 11 U.S.C. § 101(5) determined when state contract claim could be brought in a bankruptcy proceeding); *see also In re Chicago, Milwaukee, St. Paul & Pac. Ry. Co.*, 6 F.3d 1184, 1192 (7th Cir.1993) (holding that, although Minnesota state law breach of contract claim "was not actionable until ... after ... reorganization," the question whether contingent claim was allowable in reorganization proceeding was determined by federal bankruptcy law). Moreover, the Bankruptcy Code recognizes that tax claims similar to the Board's will frequently be asserted, and implicitly authorizes them, by specifically granting bankruptcy courts jurisdiction to determine the amount or legality of any tax, "whether or not previously assessed." 11 U.S.C. § 505.

In *Jensen*, we held that once the California Department of Health Services ("Department") inspector discovered a serious environmental hazard on the debtors' property, its claim against the debtors was ripe for filing under the bankruptcy code as a pre-petition, contingent claim even though its CERCLA cause of action had not yet accrued. *See* 995 F.2d at 928, 931. After the Jensens' bankruptcy proceedings closed, the Department filed a claim in bankruptcy court for cleanup costs under

CERCLA. *See id.* at 926–27. We held the claim was filed too late. The Department's right to payment under CERCLA originated from the Jensens' " 'prepetition conduct' " of which the Department had knowledge before the petition was filed and could " 'fairly contemplate[ ]' " would result in a CERCLA claim. *Id.* 930–31 (quoting *In re National Gypsum Co.,* 139 B.R. 397, 409 (N.D.Tex.1992)); *see also Siegel,* 143 F.3d at 532–33 (holding that claim for attorney's fees under deed of trust provision executed pre-petition was not pre-petition claim contingent on debtor's filing because it depended on debtor's post-petition initiation of litigation). Thus, it should have been filed in the bankruptcy proceeding as a contingent claim; because it was not, it was discharged in the bankruptcy proceeding. *See Jensen,* 995 F.2d at 931.

At oral argument, Cool Fuel seized on our statement in *In re Southern California Plastics,* 165 F.3d 1243 (9th Cir.1999), that "state law controls the validity and effect of liens in the bankruptcy context," to assert that state law governs when a claim becomes ripe under the bankruptcy code—and thus R & TC § 8971 dictates that the Board's claim is not allowable in the present bankruptcy proceeding. 165 F.3d at 1247. In *Southern California Plastics,* we concluded that state law governed the procedure for converting an allowed unsecured claim based on an attachment lien into a secured claim. *Id.; In re Wind Power Sys., Inc.,* 841 F.2d 288, 292 (9th Cir.1988) (cited in *Southern Cal. Plastics,* 165 F.3d at 1246–47) (concluding that unperfected security interest is "relegated to the status of an unsecured" claim). Therefore, we held that the bankruptcy court could not convert an attachment lien into a secured claim merely by allowing the claim and entering judgment on the underlying action when California law required a judgment in state court. *See id.* at 1248. However, we did not hold that state law governed whether a claim is allowable. Indeed, we reiterated in *Southern California Plastics that, under Jensen,* "because of the Code's broad definition of 'claim,' bankruptcy law defines when a claim arises even though the claim is based on nonbankruptcy law." *Id.*

Applying *Jensen* to the present case, the Board's claim is ripe as an allowable contingent claim. The Board's right of payment originated from Cool Fuel's pre-petition sales of 11 million gallons of diesel fuel from January to September 1993, and the Board had knowledge of these transactions before Cool Fuel filed for bankruptcy. Further, the Board had contemplated a claim by initiating an investigation and issuing a deficiency determination for the disputed taxes. Therefore, the Board's bankruptcy claim, contingent on the Board's final determination, is a ripe allowable contingent claim under 11 U.S.C. §§ 105, 502.

## CONCLUSION

For the foregoing reasons, we hold that the Board's claim for unpaid use fuel taxes is not barred under California's Revenue and Taxation Code § 8971 because it filed its proof of claim in the bankruptcy proceeding before its tax determination became final and the three-year limitations period began to run. Furthermore, we hold that the Board's claim is an allowable contingent claim under 11 U.S.C. §§ 101(5), 502 because it is based on Cool Fuel's pre-petition conduct of which the Board had knowledge and could fairly contemplate would lead to a cause of action under § 8971. The Bankruptcy Appellate Panel's decision is therefore

AFFIRMED.