SUMMARY ORDER
AFTER ARGUMENT AND UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the District Court is hereby AFFIRMED.
Appellant Wongco appeals from the August 27, 2002 judgment of the United States District Court for the Southern District of New York (Barbara S. Jones, Judge) affirming the May 16, 2000 order and decision of the United States Bankruptcy Court (Burton R. Lifland, Judge) which permanently enjoined Wongco from pursuing various contract actions against Debtor-Appellees (collectively “Federated”), successors in interest to R.H. Macy & Co., Inc. (“Macy’s”). We assume familiarity with the factual background and procedural history set forth in the detailed decisions of the District Court and Bankruptcy Court below.
On appeal of a bankruptcy order, “[o]ur review of the district court’s decision is plenary.” In re Manville Forest Prods. Corp., 209 F.3d 125, 128 (2d Cir.2000). We “independently examine the bankruptcy court’s decision, applying the clearly erroneous standard to findings of fact and de novo review to conclusions of law.” In re The Lionel Corp., 29 F.3d 88, 92 (2d Cir.1994).
In this case, the Bankruptcy Court determined that various contract claims asserted by Wongco in an action filed against Federated in California state court in August 1998 were barred by the October 14, 1992 General Claims Bar Order and the December 8, 1994 Confirmation Order issued by the Bankruptcy Court as part of the underlying Chapter 11 bankruptcy proceedings involving Macy’s and its affiliates. The enjoined contract claims relate to a lease for real property in San Francisco, California, originally entered into by Macy’s and Wongco’s predecessor in interest in 1945. In 1986, pursuant to a leveraged buy-out, R.H. Macy & Co. assigned the lease to Macy’s California, Inc. Wongco asserts that Macy’s breached its contractual obligations and its obligations of good faith and fair dealing by failing to file a notice of ownership, as required under California law, when the lease was transferred in 1986 and by failing to obtain Wongco’s consent prior to the assignment.
The assignment of the lease triggered a property tax reassessment for the 1986-1993 tax years. A reassessment notice was sent to Wongco in August 1994, and Wongco was ultimately billed for more than $3 million in taxes and interest which it subsequently paid in two equal installments in December 1994 and April 1995. Wongco asserts that it is entitled to reimbursement for these taxes and argues that the Bankruptcy Court erred in classifying its claims as pre-petition, contingent claims which are barred by the General Claims Bar Order and discharged by the final Confirmation Order.
A. Contingent Claims
Under the Bankruptcy Code, “[i]t is well-established that a claim is ... allowable *32 ... in a bankruptcy proceeding even if it is a cause of action that has not yet accrued.” In re Cool Fuel, Inc., 210 F.3d 999, 1006 (9th Cir.2000) (collecting cases). Section 101(5)(A) of the Bankruptcy Code defines “claims” broadly as encompassing “even contingent and unliquidated debts.” In re Manville, 209 F.3d at 128 (citing 11 U.S.C. § 101(5)(A)). Although the Bankruptcy Code does not specifically define “contingent” claims, in the context of contract actions, we have determined that contingent claims encompass “ ‘obligations that will become due upon the happening of a future event that was within the actual or presumed contemplation of the parties at the time the original relationship between the parties was created.’ ” Id. at 128-29 (quoting In re Chateaugay Corp., 944 F.2d 997, 1004 (2d Cir.1991)); accord Siegel v. Federal Home Loan Mortgage Corp., 143 F.3d 525, 532-33 (9th Cir.1998); In re CD Realty Partners, 205 B.R. 651, 656 (Bankr.D.Mass.1997).
Wongco argues in wholly conclusory fashion that the property tax liabilities at issue were not sufficiently foreseeable so as to give rise to a contingent claim within the scope of § 101(5)(A). But it fails to offer any explanation as to why the increased tax liability, attributable to the disputed assignment of the lease, would not have been reasonably or fairly contemplated by the parties prior to the bankruptcy proceedings. Indeed, the lease itself contains detailed and specific provisions relating to the payment of taxes, strongly suggesting that the parties did contemplate the potential tax consequences of their contractual relationship. Moreover, it can be fairly presumed in the usual case that sophisticated business entities understand that the assignment of a lease may have significant tax consequences.
B. Pre-Petition Claims
Wongco further argues that its claims may not be deemed pre-petition claims, because the post-petition 1994 notice of tax reassessment was an essential element of its enjoined claims. We have previously explained that “[a] claim will be deemed pre-petition when it arises out of a relationship recognized [by contract] ... if before the filing of the bankruptcy petition, the relationship between the debtor and the creditor contained all of the elements necessary to give rise to a legal obligation.... ” In re Chateaugay Corp., 53 F.3d 478, 497 (2d Cir.1995) (internal quotations and citation omitted). In this case, both the Bankruptcy Court and the District Court correctly determined that the reassessment of taxes was not an essential element of Wongco’s contract claims, but merely established the extent of damages due on the claims. Because Wongco’s alleged right to payment originates from the pre-petition lease assignment and the pre-petition allocation of tax payments governed by the parties’ lease, Wongco’s claims were properly treated as pre-petition claims by the Bankruptcy Court. Cf. In re Cool Fuel, 210 F.3d at 1006-07 (for bankruptcy purposes, a claim for taxes by the California State Board of Equalization accrues prior to Board’s issuance of a final determination of taxes owed).
Accordingly, as Wongco failed to assert the claims at issue by the date set by the Bankruptcy Court in the General Claims Bar Order or prior to the issuance of the Confirmation Order discharging all debts arising prior to the Reorganization Plan’s effective date, its claims are barred and properly enjoined.
C. General Release
Although the District Court did not affirm on the basis of the mutual general *33 release contained in the “Second Amendment” to the renewal lease which the parties signed in 1991, the Bankruptcy Court determined in its permanent injunction order that the general release independently barred Wongco’s claims. The general release states that Wongco “hereby fully releases, acquits and forever discharges” Macy’s and its predecessors for “any and all debts, claims, rights, liabilities, demands, [or] damages .... both known and unknown, foreseen and unforeseen, which result from, arise out of, are related to or are connected with the Initial Lease or the Renewal Lease, except for matter with result from this Second Amendment.” The release further specifies that the “parties specifically waive the provisions of Section 1542 of the California Civil Code.”*
As this issue was fully briefed before the Bankruptcy Court on Federated’s motion for a permanent injunction, it is fairly raised on appeal. Under California law, such clearly worded, unambiguous releases are generally legally enforceable. See United States ex rel. Giles v. Sardie, 191 F.Supp.2d 1128, 1131-34 (C.D.Cal.2000); Winet v. Price, 4 Cal.App.4th 1159, 1166-69, 6 Cal.Rptr.2d 554 (1992). As Wongco fails to challenge the validity of the release on appeal, we conclude, in the alternative, that the general release independently bars its contract claims.
For the reasons stated above, the judgment of the District Court affirming the order of the Bankruptcy Court is hereby AFFIRMED.**

 Absent such an explicit waiver, under § 1542 "[a] general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.” See Cal. Civ.Code § 1542.

 Because we affirm on these grounds, we do not address the other arguments raised by the parties.